UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER CARROLL-HARRIS,

        Plaintiff,

v.

ROBERT WILKIE, Acting
Secretary of Veteran Affairs,

        Defendant.

Case No. 2:17-cv-11711

HONORABLE STEPHEN J. MURPHY, III

/

**OPINION AND ORDER**
**<u>GRANTING DEFENDANT'S MOTION FOR SANCTIONS [48]</u>**

On April 2, 2018, after nearly six months of discovery, Plaintiff Jennifer Carroll-Harris filed her second amended complaint and alleged that Defendant failed to accommodate her disability, created a hostile work environment, and retaliated against her. ECF 23. The parties stipulated to four extensions of discovery. ECF 30, 35, 41, 46. During discovery, Defendant filed a motion to compel and a motion to dismiss certain claims for failure to comply with discovery orders. ECF 20, 32. The Court also conducted three telephonic status conferences with the parties. Then, on March 15, 2019, Defendant filed a motion for sanctions. ECF 48. Plaintiff filed two responses without explaining the duplicate filing. ECF 49, 50.[1] The Court will address

---

[1] After briefing was completed, the parties stipulated to additional briefing. *See* ECF 56. Plaintiff's sur-reply reiterated many of her previous arguments and provided several new ones. First, she explained she used a modified note-taking method. ECF 57, PgID 713–14. Second, she attached several exhibits. The most notable exhibit is Plaintiff's affidavit. *See* ECF 57-3. But her affidavit primarily recounts the events leading to her lawsuit. In a single paragraph, Plaintiff states "my recall notes for this district court case were drafted perhaps 2016/17; years after originals were sent.

1

only the later-filed response and treat it as an amended response. The Court has reviewed the briefs and finds that a hearing is unnecessary. E.D. Mich. LR 7.1(f). For the reasons below, the Court will grant Defendant's motion.

## BACKGROUND

Plaintiff alleged that her employer, a hospital, failed to accommodate her disability, created a hostile work environment, and retaliated against her. *See* ECF 23, PgID 201–08. During discovery, Plaintiff produced emails related to her attempts to remedy the situation. One disclosure included three emails. Subsequent disclosures included three substantially similar emails with altered language.[2] Defendant argues that the three emails disclosed by Plaintiff "appear to be emails . . . fabricated by the Plaintiff." ECF 48, PgID 313.

I.  October 3, 2013 Email

First, on October 3, 2013, Plaintiff sent an email complaining about radio noise in her work area ("October Email 1"). In relevant part, the email stated:

| From: | Carroll-Harris, Jennifer |
| Sent: | Thursday, October 3, 2013 1:17PM |
| To: | Thomas, Bonnie, VBADTRT; Lawrence, Charles |

---

Defendant requested my notes, which I never fabricated and that's a lie." *Id.* at 724. Plaintiff argues that sanctioning her for her note-taking method "is irrational." ECF 57, PgID 714. But a sanction would not punish Plaintiff for her method of taking notes, it would remedy her provision of falsified evidence.

Defendant responds that he identified two additional fabrications produced by Plaintiff during discovery. *See* ECF 58. Plaintiff cannot respond to the allegations because they were raised in a response to a sur-reply. The Court will therefore not address them specifically. But, the exhibits attached to Defendant's response to the sur-reply underscore Plaintiff's willfulness and reinforce the Court's decision.

[2] Plaintiff does not dispute that the email language differed. Rather, she argues that the differences do not warrant a sanction against her. The Court will address Plaintiff's argument further *infra*. "Discussion."

2

Subject:     RE: Info requested

Hello Ms. Thomas, … On yesterday, the stereo was elevated so loud until my lead spoke with the staff and nurse manager to no avail. Yet, today I am the one issued notice not to lower volume on radio and the staff laughs at my attempts to get the proper use of my accommodation. I feel this is because EEO, HR, and all affiliated with granting my accommodation have failed to meet their obligations. I plan to contact the Dept. of Labor, whom assisted with getting my accommodations and other matters.

ECF 48-10, PgID 345. The second version of the email ("October Email 2") stated:

From:        Carroll-Harris, Jennifer
Sent:        Thursday, October 3, 2013 1:17PM
To:          Lawrence, Charles
Subject:     RE: request

Hello, … On yesterday, the stereo was elevated so loud until my lead spoke with the staff and nurse manager to no avail. Yet, today I am the one issued notice not to lower volume on radio and the staff laughs at my attempts to get the proper use of my microphone. I feel this is because EEO, HR, and all affiliated with Dept. of Labor and accommodation have failed to meet their obligations. I plan to contact the Dept. of Labor, whom assisted with getting me accommodations and other matters.

ECF 48-14, PgID 351. As Defendant notes, the second email contained the following changes to the email's language:[3]

From:        Carroll-Harris, Jennifer
Sent:        Thursday, October 03, 2013 1:17 PM
To:          ~~Thomas, Bonnie, VBADTRT~~; Lawrence, Charles
Subject:     RE: ~~Info requested~~ request

Hello ~~Ms. Thomas~~, On yesterday, the stereo was elevated so loud until my lead spoke with the staff and nurse manager to no avail. Yet, today I am the one issued notice not to lower volume on radio and the staff laughs at my attempts to get the proper use of my ~~accommodation~~

---

[3] All changes are in red. Content that is red, underlined, and struck through was cut between the first email version and the second. New information is in red and underlined.

3

microphone. I feel this is because EEO, HR, and all affiliated with granting my Dept. Of Labor and accommodation have failed to meet their obligations. I plan to contact the Dept. of Labor, whom assisted with getting my me accommodations and other matters.

During her November 15, 2018 deposition ("November Deposition"), Plaintiff testified that she sent the October Email 2 to Charles Lawrence. ECF 48-18, PgID 435 (noting the exhibit and saying "this is what I sent to Charles Lawrence"). But then, during her March 6, 2019 deposition ("March Deposition"), Plaintiff testified that October Email 1 "was for sure sent." ECF 48-17, PgID 378 (responding "yes" to the question of whether deposition exhibit N was for sure sent); *id.* at 377 (describing that exhibit N included Bonnie Thomas's name in the "to" line). Also, Plaintiff contradicted her November Deposition and stated that she was unsure whether the October Email 2 was sent. *Id.* at 377–78 (describing exhibit M and stating she did not know whether it was sent). Finally, Plaintiff represented that the changed language was simply her notes. *See id.* at 377 (describing part of the emails as "maybe just the note part"), 378 (stating "[t]his may be the note part I attached" to the email).

II. July 15, 2014 Email

Second, on July 15, 2014, Plaintiff emailed an Equal Employment Opportunity ("EEO") counselor, Lydia Ward, to discuss the EEO process ("July Email 1"). In relevant part, the email stated:

> I have had contact with Fred Harris, on the 10th of July, Fri. which is likely why I missed your call. I met with him and he introduced me to his intern. Fred stated that he was not including my complaint for accommodations because he provided them and does not have to make sure the environment is adequate, but that the accommodation is working correctly, and he done that. I stated that I disagreed because

4

on several occasions I am not able to utilize my accommodation due to the excessively loud music. He again stated, No.

ECF 48-12, PgID 347. The second version of the email ("July Email 2") stated:

I have had contact with Fred Harris (EEO), on the 10th of July, Fri. which is likely why I missed your call. I met with him and he introduced me to his intern. Fred stated that he was not including my complaint for accommodations because he provided them and does not have to make sure the environment is adequate, but that the equipment is working correctly, and he done that. I stated that I disagreed because on several occasions I am not able to utilize Speech Recognition due to the excessively loud music. He again stated, No.

ECF 48-15, PgID 352. As Defendant notes, the second email contained the following changes to the email's language:

I have had contact with Fred Harris (EEO), on the 10th of July, Fri. which is likely why I missed your call. I met with him and he introduced me to his intern. Fred stated that he was not including my complaint for accommodations because he provided them and does not have to make sure the environment is adequate, but that the equipment accommodation is working correctly, and he done that. I stated that I disagreed because on several occasions I am not able to utilize my accommodation Speech Recognition due to the excessively loud music. He again stated, No.

During her November Deposition, Plaintiff stated that she wrote the July Email 2 to Lydia Ward. ECF 48-18, PgID 442. During her March Deposition, Plaintiff stated that one email was her "note" related to an EEOC proceeding. ECF 48-17, PgID 374.[4] She further testified that she "actual[ly] sent" one email "because it has

---

[4] Overall litigation of the case has been far from proficient. Because Defendant's motion references the portions of Plaintiff's deposition that relate to the October 2014 emails and not the July 2014 emails, the Court is unable to determine the identity of the exhibits. *See* ECF 48, PgID 320 (quoting ECF 48-17, PgID 376–78). Defendant's error caused Plaintiff substantial confusion. *See, e.g.,* ECF 50, PgID 589. But, Plaintiff's attempted clarification was less than helpful. *See id.*

5

everything on it" and that the other was an "exercise with the EEOC" and was her "note." *Id.* at 375.

III. <u>August 19, 2014 Email</u>

Third, on August 19, 2014, Plaintiff contacted her supervisor, Tamika Ricumstrict, about disability accommodations ("August Email 1"). In relevant part, the email stated:

> Tamika, I do not need changes at this time, but I do need cooperation to utilize my accommodations per ADA, per Title VII of Civil Rights Act of 1964, and per VA's Diversity policy. I cannot complete my job duties without accommodations. Now if you side with others to discriminate against my accommodations, which prohibits me working. We have a big problem because VA states they are totally involvement with ICARE. So, management's failure to exhibit ICARE to any veteran (especially a employed veteran with accommodations to assist with job duties), is in direct violation of statutes….

ECF 48-13, PgID 348. The second version of the email ("August Email 2") stated:

> Tamika, I do need accommodations and I do need cooperation to utilize speech recognition per ADA, per Title VII of Civil Rights Act of 1964, and per VA's Diversity policy. I cannot complete my job duties without accommodations. Now if you side with others to discriminate against accommodating me, which prohibits me working. We have a big problem because VA states they are totally involved with ICARE. So, management's failure to exhibit ICARE to any veteran (especially a employed veteran need accommodations to assist with job duties), is in direct violation of statutes….

ECF 48-16, PgID 353. As Defendant notes, the second email contained the following changes to the email's language:

> Tamika, I do ~~not need changes at this time, but~~ need accommodations and I do need cooperation to utilize ~~my accommodations~~ speech recognition per ADA, per Title VII of Civil Rights Act of 1964, and per VA's Diversity policy. I cannot complete my job duties without accommodations. Now if you side with others to discriminate against ~~my accommodations~~ accommodating me, which prohibits me working. We

6

have a big problem because VA states they are totally involvement with ICARE. So, management's failure to exhibit ICARE to any veteran (especially a employed veteran ~~with~~ need accommodations to assist with job duties), is in direct violation of statutes….

During her November Deposition, Plaintiff acknowledged August Email 2 and explained its contents. ECF 48-18, PgID 446–47. During her March Deposition, Plaintiff represented that August Email 2 "may have been" her note from "doing an EEOC exercise where [she] put in what it says to get an outcome." ECF 48-17, PgID 380. She further stated it was not sent. *Id.* at 381.

### STANDARD OF REVIEW

The Court may issue sanctions if a party disobeys a discovery order. Fed. R. Civ. P. 37(b)(2)(A). "[D]ismissing the action or proceeding in whole or in part" is a permissible sanction. Fed. R. Civ. P. 37(b)(2)(A)(v). The Court also possesses the inherent power to sanction litigants for bad-faith and fraudulent conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–45 (1991). The Court's inherent powers allow it "to protect the due and orderly administration of justice and maintain the authority and dignity of the court." *Bowles v. City of Cleveland*, 129 F. App'x 239, 241 (6th Cir. 2005) (internal marks and quotation omitted).

The Court considers four factors when deciding whether to dismiss a case as a Rule 37 sanction:

> (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366–67 (6th Cir. 1997) (internal marks and quotation omitted). Whether to dismiss a case as a discovery sanction is entrusted to the Court's discretion. *See Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999) (noting that "[a] district court must be given substantial discretion" when managing its docket and then applying the abuse-of-discretion standard).

## DISCUSSION

The Court must determine whether a sanction is appropriate and, if so, which sanction to impose. The Court will not address the merits of Plaintiff's substantive claims.[5] *See Plastech Holding Corp. v. WM Greentech Auto. Corp.*, 257 F. Supp. 3d 867, 874 n.8 (E.D. Mich. 2017) (explaining that, because the Court found that a party's misconduct warranted dismissal as a sanction, it would not address the merits). The Court will now consider *Harmon*'s four factors.

I. <u>Willfulness, Bad Faith, or Fault</u>

Willfulness, bad faith, or fault require "a clear record of delay or contumacious conduct." *Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013) (quoting *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997)). "Contumacious conduct refers to behavior that is 'perverse in resisting authority' and 'stubbornly

---

[5] The Court reminds both parties that the sanctions motion does not address the merits of Plaintiff's case. *See, e.g.,* ECF 50, PgID 587, 591 (Plaintiff's response brief arguing that the Government's "contention" that the changed emails support the finding that Plaintiff was accommodated is incorrect); *see also id.* at 587–89, 591 (arguing the merits of whether Plaintiff received an appropriate accommodation); *see also, e.g.,* ECF 48, PgID 319 (Defendant's motion brief stating that "[t]he changes in these emails removed language that support the fact that Plaintiff received her accommodation").

8

disobedient.'" *Id.* at 704–05 (quoting *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008)). A party's conduct "must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Id.* at 705 (quoting *Tung–Hsuing Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005)).

Defendant argues that Plaintiff fabricated the emails. Plaintiff responds in three general ways: (1) the "fabricated versions [of the emails] are nothing more than Plaintiff's personal notes to the original documents," (2) the changes do not impact "the evidentiary content of the original documents," and (3) the modified versions were disclosed in response to the Defendant's discovery requests. ECF 50, PgID 595–96; *see also id.* at 586–87.[6] The evidence in the record belies Plaintiff's first and second arguments.

---

[6] Plaintiff also argued about the Government's identification of the exhibits. *See, e.g.,* ECF 50, PgID 589 ("The July 15, 2014's email to Lydia Ward referenced as Exhibit N is incorrect. Exhibit N refers to Defendant's Exhibit **DEF-00467**. This email was from Plaintiff to Bonnie Thomas and not to Lydia Ward as the Government contends."). Here, Plaintiff confuses the identification of exhibits during her deposition, *see* ECF 48-17, PgID 355 (listing the email to Bonnie Thomas as "Exhibit N"), and the exhibits attached to the Government's motion, *see* ECF 48-15, PgID 352 (listing Exhibit N and containing the email to Lydia Ward); *see also* ECF 50, PgID 590 ("The document the Government compares in its brief as Exhibits L and O, at page 7 of Government's brief, that the Government reference to Exhibit L, is to Lydia Ward, not Tamika Ricumstrict."). Plaintiff's failure to distinguish between the exhibit names designated at her deposition and the exhibits attached to Defendant's motion confuses matters. Nevertheless, Plaintiff disclosed emails that contained different language and failed to provide any marking that would tend to show the emails were not originals.

9

### A. *Plaintiff's Notes.*

Plaintiff testified that the changed emails were here "notes." But nothing in the disclosures supports her characterization. For example, the emails all include a heading with a date and time, the subject line, the name of the sender, and the name of the recipients. *Compare, e.g.,* ECF 48-10 *with* 48-14. The alleged "notes" are not marked on the body of the original emails, but completely replace portions of the emails without explanation or identification. *Compare id.*; *see also supra* "Background" Parts I–III. The Court cannot conceive of a reason why Plaintiff would disclose the emails with no annotation except to try to introduce falsified information into the record. And, even if Plaintiff's failure to identify the disclosure was inadvertent, the conduct demonstrates a reckless disregard for the effect of her conduct on the proceeding.

Oddly, Plaintiff also argues that, after reviewing an exhibit, she "made notes to refresh her recollection to clarify the word accommodation as it refers to microphone." ECF 50, PgID 586. She avers that she made the "note, to assist in remembering the event." *Id.* at 592; *id.* at 593–94 ("The fact that Plaintiff made personal notes to [the original emails] . . . *noting her reaction, recollection, and opinion* does not in any way alter the original documents.") (emphasis added), *id.* at 596 (the changes are "the Plaintiff's comments, personal thoughts, and her reactions to the Government not accommodating her disability"). But there are no personal thoughts, reactions, or opinions included in the alterations. And Plaintiff testified that she made the notes as part of an EEOC exercise, not to refresh her recollection

10

or as a memory device after or during her deposition. *See, e.g.,* ECF 48-17, PgID 374 (referencing her note taking for the EEOC exercise). Plaintiff therefore presents an argument that is unsupported by her testimony or by other record evidence.

*B. Change in Evidentiary Content.*

Plaintiff also argues that "[n]othing in her note changed the evidentiary context of" the exhibits. ECF 50, PgID 592. Plaintiff's assertion is unpersuasive. Her changes did alter the language of the original documents. *See supra* "Background" Parts I–III. For example, the changes to the August 2014 emails change their evidentiary content. In August Email 1, Plaintiff stated: "I do not need changes at this time, but I do need cooperation to utilize my accommodations." ECF 48-13, PgID 348. In August Email 2, Plaintiff states "I *do* need *accommodations and* I do need cooperation to utilize speech recognition." ECF 48-16, PgID 353 (emphasis added). The alteration changes the content of what Plaintiff communicated to her employer, which would affect the Court's or a jury's analysis of her failure-to-accommodate claim.

Even if the changes did not impact the emails' evidentiary weight, the Court could still find that Plaintiff's conduct was willful, in bad faith, or her fault. "A party's willingness to fabricate evidence bears on character and credibility, which often [are] broadly at issue in a given case." *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1181 (10th Cir. 2009). Because willful fabrication of evidence "commits a fraud on the court," it would be strange if the "sanction of dismissal depended only on the

11

falsehood's relevance to the parties' claims, and failed to account for the act's interference with the judicial process." *Id.*

*C. Additional Issue.*

In her response brief, Plaintiff argues that the Government did not include a complete disclosure of the August 2014 emails. ECF 50, PgID 590 ("The complete Exhibit O [referencing the deposition exhibit designation] which includes the missing page as to Ricumstrict is attached."). Plaintiff includes the email as an exhibit. *See* ECF 50-12. The emails bear the Bates stamp numbers PLA-00191a-b and PLA-00192. *See id.* But Plaintiff never produced documents with those Bates numbers. *See* ECF 51-1, PgID 679–80 (declaration of Defendant's paralegal specialist); *see also id.* at 685 (screenshot of the files disclosed by Plaintiff). Plaintiff's appeal to extra-record evidence demonstrates her general disregard for how her conduct during discovery negatively impacts the Court's proceedings and Defendant's ability to defend the case.

*D. Conclusion.*

Plaintiff's conduct demonstrates "a reckless disregard for the effect of [her] conduct on [the Court's] proceedings." *Carpenter*, 723 F.3d at 705 (quoting *Tung–Hsuing Wu*, 420 F.3d at 643). Plaintiff testified that the modified emails were simply her "notes," but she failed to identify when she made the changes or explain why the "notes" possessed nearly identical characteristics to the originals. Moreover, her disclosure failed to note that the email contained altered language. The Court therefore determines that Plaintiff's conduct was willful, done in bad faith, or her fault. The first *Harmon* factor weighs in favor of sanctioning Plaintiff.

II. Prejudice

Plaintiff's disclosures prejudiced Defendant and the legal system generally. First, Defendant has "been put to enormous additional effort and expense to ferret out plaintiff's lies and to double check every piece of information." *Garcia*, 569 F.3d at 1179. "[S]ubmission of falsified evidence substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout litigation." *Id.* at 1180. Second, Defendant was required to reopen discovery, to retake Plaintiff's deposition, and to file a motion for sanctions. Third, Plaintiff's conduct delayed the case. *See, e.g.,* ECF 44 (notice from Defendant requesting a status conference prior to resetting dates because of the discovery issues presented by the case); *see also* ECF 48, 50, and 51 (briefing on a motion for sanctions immediately before the dispositive motion deadline). Fourth, Plaintiff's conduct is "prejudicial to the system of civil justice generally [because] it involved a fraud on the court." *REP MCR Realty, L.L.C. v. Lynch*, 363 F. Supp. 2d 984, 1012 (N.D. Ill. 2005).

Plaintiff responds that "[a]ny prejudice to the Government as to Plaintiff's use of her personal notes was created by the Government's misinterpretation of the use of Plaintiff's notes." ECF 50, PgID 597. Plaintiff fails to address the prejudice described above. The second *Harmon* factor therefore also weighs in favor of sanctioning Plaintiff.

III. Warning about Failure to Cooperate

The Court did not warn the parties that producing falsified discovery documents could lead to a sanction. But no single factor is dispositive. *Barron v. Univ.*

13

*of Mich.*, 613 F. App'x 480, 484 (6th Cir. 2015). And the Court finds that a warning is not appropriate here.

A district court may abuse its discretion by dismissing a case as a sanction without first imposing an alternative sanction. *See Patterson v. Twp. of Grand Blanc*, 760 F.2d 686 (6th Cir. 1985); *see also Barron*, 613 F. App'x at 484 (noting positively that the district court imposed a financial sanction prior to dismissal). But neither *Patterson* nor *Barron* apply here. Both cases involved a party that failed to disclose documents.

Here, Plaintiff disclosed altered documents without explanation. Thus, rather than simply missing a discovery deadline, Plaintiff affirmatively produced misleading discovery documents. When a party is willing to submit altered documentation in discovery, an additional warning would be superfluous. Moreover, Plaintiff entirely failed to address whether the Court should provide her a warning. *See* ECF 50, PgID 597–98 (Plaintiff's response addressing *Harmon*'s third factor and lacking relevant arguments). The third *Harmon* factor therefore weighs in favor of a sanction.

IV.     Less Drastic Sanctions

Plaintiff argues that "the sanction of dismissal of Plaintiff's case is inappropriate," but fails to identify an alternative. *Id.* at 599. Regardless, a less drastic sanction is not appropriate here. Three less drastic sanctions the Court could consider include fining Plaintiff, excluding the evidence, or dismissing the claim to which the evidence relates. The alternatives are insufficient.

14

First, fining Plaintiff would inadequately remedy the harm to the public's interest in preserving the integrity of the courts and would inadequately deter potential future misconduct. Nor does a fine sufficiently address Defendant's concern about the veracity of other documents disclosed by Plaintiff.

Second, excluding the evidence is also an insufficient sanction. Were the Court to merely exclude the problematic emails, litigants could "infer that they have everything to gain, and nothing to lose" by manufacturing evidence. *Garcia*, 569 F.3d at 1180 (quoting *Pope v. Fed. Express Corp.*, 138 F.R.D. 675, 683 (W.D. Mo. 1990)).

Third, dismissing the claim to which the evidence relates does not account for the wrongdoing. Despite her misconduct, Plaintiff would be able to continue with two of her three claims. The sanction could create "an incentive for a plaintiff, who has brought multiple claims, to try to fraudulently bolster one of her claims because[,] if caught, she could always litigate the other claims." *Neal v. IMC Holdings, Inc.*, NO. 1:06-CV-3138-WSD/AJB, 2008 WL 11334050, at *6 (N.D. Ga. Oct. 20, 2008), *adopted by* 2009 WL 10669622 (N.D. Ga. Mar. 31, 2009).

Thus, when a party fabricates discovery, "the interests of the judicial system militate strongly in favor of dismissal of the suit so as to deter all litigants from such misconduct in the future." *REP MCR Realty*, 363 F. Supp. 2d at 1012 (collecting cases). The fourth *Harmon* factor therefore weighs in favor of a sanction of dismissal, particularly. The Court will not impose lesser sanctions and will dismiss Plaintiff's claims.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion for sanctions [48] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

This is a final order and closes the case.

**SO ORDERED**.

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: May 22, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 22, 2019, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager